(No. 82106

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY WARD, Appellant.

*Opinion filed June 17, 1999.—Rehearing denied October 4, 1999.*

HARRISON, J., concurring in part and dissenting in part.

James A. Rolfes, Ann B. Spillane and Bina Sanghavi, of Sachnoff & Weaver, Ltd., and Martin S. Carlson and Sharon Hicks, both of the Office of the State Appellate Defender, all of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Renee Goldfarb and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Jerry Ward, was convicted of the murders of Bruce Herd and Herd's girlfriend, Pamela Williams; the armed robbery of Bruce Herd; and possession of a stolen motor vehicle. For the murder convictions, the circuit court sentenced defendant to death. The court also imposed a 30-year term of imprisonment for armed robbery and a 3-year term of imprisonment for possession of a stolen motor vehicle.

On direct appeal, this court affirmed defendant's convictions and sentences. *People v. Ward*, 154 Ill. 2d 272 (1992) (*Ward I*). The United States Supreme Court denied defendant's petition for a writ of *certiorari*. *Ward v. Illinois*, 510 U.S. 873, 126 L. Ed. 2d 161, 114 S. Ct. 204 (1993). Defendant then filed a petition seeking relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq*. (West 1994)). Defendant's petition, as amended, contains 27 counts.

On the State's motion, the circuit court dismissed defendant's petition without an evidentiary hearing. The court held that counsel's performance was not ineffec-

tive, that the alleged trial errors did not deprive defendant of his constitutional rights, and that the Illinois death penalty law is constitutional. This appeal followed. Because the judgment challenged in defendant's petition imposed a sentence of death, the appeal was brought directly to this court. 134 Ill. 2d R. 651(a).

Defendant contends that the circuit court erred in dismissing his post-conviction petition without an evidentiary hearing. In addressing this claim, we begin by noting that a defendant is not entitled to an evidentiary hearing on a post-conviction petition as a matter of course. Rather, a hearing is required only when the allegations of the petition, supported by the trial record and the accompanying affidavits, make a substantial showing of a violation of a constitutional right. *People v. Hobley*, 182 Ill. 2d 404, 427-28 (1998).

## ANALYSIS

### Standard of Review

Where, as here, the State seeks dismissal of a petition instead of filing an answer, its motion to dismiss assumes the truth of the allegations to which it is directed and questions only their legal sufficiency. *People v. Wilson*, 39 Ill. 2d 275, 277 (1968). All well-pleaded facts in the petition and in the supporting affidavits are to be taken as true. *People v. Caballero*, 126 Ill. 2d 248, 259 (1989). If the circuit court determines that the petition should be dismissed without an evidentiary hearing, its judgment is subject to plenary review. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

### Ineffective Assistance of Counsel

Defendant organizes his arguments on the 27 dismissed counts into four main issues on appeal. He first argues that the court erred in dismissing his ineffective assistance of counsel claims because his petition demonstrates a violation of his constitutional rights during the

guilt and sentencing phases of his trial. To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance so prejudiced the defendant as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65 (1984). It is often easier to dispose of an ineffectiveness claim based on the second prong of the test, and counsel's performance need not be evaluated if it can be shown that the defendant suffered no prejudice. *People v. Albanese*, 104 Ill. 2d 504, 527 (1984). To meet the second prong of the test, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

On direct appeal, this court considered whether defendant received the ineffective assistance of counsel. Defendant argued in *Ward I* that his trial counsel erred in failing to (1) call witnesses at trial who were called at sentencing; (2) locate certain alleged alibi witnesses; (3) make a motion *in limine* to preclude the introduction of defendant's prior convictions; and (4) object to the admission of certain evidence, testimony, and improper remarks by the State. The court held that, assuming *arguendo* that the alleged errors cumulatively constituted substandard representation, defendant had not established a reasonable probability that the result of the case would have been different absent those errors. This was so because of the overwhelming evidence of defendant's guilt. *Ward I*, 154 Ill. 2d at 317-18. Earlier in *Ward I*, this court summarized the overwhelming evidence against defendant as follows:

"Defendant was arrested after a police chase, in the victim's car. This occurred very shortly after two gunshot

sounds were heard and Herd's body was discovered. [Defendant] had white fleshy matter and blood on his face and clothing. The blood makeup was consistent with Williams' blood. The arresting officer saw defendant remove a .38 Smith and Wesson gun from his waistband, which had two spent cartridges and bullets which were 'non-factory.' Gun residue tests proved that defendant had recently fired a gun. The bullet recovered from Herd was a 'non-factory' bullet fired from a gun with characteristics consistent with the gun recovered from the defendant. Witnesses identified the car defendant was driving as the one that 'dumped' Herd's body shortly before defendant's arrest." *Ward I*, 154 Ill. 2d at 301.

The State argues that defendant's ineffective assistance of counsel arguments are either waived or barred by *res judicata*. Considerations of waiver and *res judicata* limit the range of issues available to a post-conviction petitioner to constitutional matters that have not been, and could not have been, previously adjudicated. *People v. Tenner*, 175 Ill. 2d 372, 378 (1997). Rulings on issues that were previously raised at trial or on direct appeal are *res judicata*, and issues that could have been raised, but were not, are waived. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995).

### Trial

Defendant's first contention of ineffective assistance of counsel is that his trial counsel failed to uncover and present evidence that would have undermined the State's case and supported the defense. This court partially considered this claim on direct appeal. However, defendant supports this argument with affidavits that were not part of the original trial record. Rules of waiver and *res judicata* will be relaxed where the facts relating to the issue of counsel's incompetency do not appear on the face of the record. *People v. Orange*, 168 Ill. 2d 138, 167 (1995). In *Orange*, the court agreed to consider in a post-conviction appeal the issue of defense counsel's failure to

present mitigating evidence at sentencing, even though it had considered that argument on direct appeal. The court considered the issue a second time because defendant attached witness affidavits to his post-conviction petition, and these affidavits were not part of the original trial record. See *Orange*, 168 Ill. 2d at 167.

After reviewing the affidavits attached to defendant's petition, we cannot say that defendant has shown a reasonable probability that the outcome of his trial would have been different if this testimony had been presented. Defendant argues that this evidence could have helped establish that he knew the victims, was drinking with them on the night of the murders, and that a second person, Steve Burtin, was involved in the crime. Nevertheless, this evidence neither exonerates defendant nor diminishes the strong evidence of defendant's active participation in this crime. Accordingly, defendant has not shown that he was prejudiced by his counsel's failure to investigate and present this evidence.

Defendant also argues that appellate counsel was ineffective for failing to argue trial counsel's incompetence in failing to request the court's assistance in compelling the appearance of these witnesses and in inadequately attempting to subpoena a critical witness. Claims of ineffective assistance of appellate counsel are evaluated under the *Strickland* standard, which requires the defendant to show both deficient performance by counsel and resultant prejudice. *People v. Pecoraro*, 175 Ill. 2d 294, 333 (1997). As applied to claims involving the failure of appellate counsel to raise a particular issue, the defendant must show that the failure to raise the issue was objectively unreasonable and that, but for this failure, a reasonable probability exists that the sentence or conviction would have been reversed. *People v. Mack*, 167 Ill. 2d 525, 532 (1995).

This court held in *Ward I* that the trial court did not

err in not granting defendant a continuance to locate these witnesses (*Ward I*, 154 Ill. 2d at 305-10), and the court held above that no reasonable probability exists that the result would have been different had these witnesses been called. Accordingly, appellate counsel was not ineffective for failing to raise this issue.

Defendant raises four other contentions of ineffective assistance of counsel at trial. These claims are procedurally barred. Defendant claims that trial counsel was ineffective for failing to object to the court's questioning of two potential jurors outside his presence. This argument could have been raised on direct appeal and was not. Consequently, it is waived. *Coleman*, 168 Ill. 2d at 522.

Defendant also argues that appellate counsel was ineffective for failing to raise this issue. Defendant does not demonstrate how he was prejudiced by the trial court's *ex parte* questioning of these potential jurors. A defendant cannot establish reversible error by arguing that he was absent from part of the *voir dire* unless he can establish that he was denied a constitutional right. See *People v. Bean*, 137 Ill. 2d 65, 80-81 (1990). Defendant does not identify what constitutional right was violated. Neither of these potential jurors served on the jury, and defendant does not challenge the impartiality of the jurors who convicted him. Accordingly, he has not established prejudice. See *Bean*, 137 Ill. 2d at 81-82. Because in his direct appeal defendant could not have successfully argued that his trial counsel was ineffective for failing to object to the court's *ex parte* questioning of these two jurors, appellate counsel was not ineffective for failing to make this argument.

Defendant next contends that trial counsel was ineffective for failing to object to the introduction of repetitive, prejudicial testimony about white fleshy material that two police officers identified as brain matter. This argument is meritless for two reasons. First, in *Ward I*

this court held that this evidence was proper. *Ward I*, 154 Ill. 2d at 296. This holding is *res judicata.* Defendant argued in *Ward I* with respect to the testimony of only one of the officers. The court held that the evidence was proper and, in any event, defense counsel successfully objected to the identification of the evidence as brain matter. Second, defendant's argument with respect to the other testimony and its cumulative effect is waived because it was not made on direct appeal and is not based on evidence outside of the original trial record.

Defendant contends that appellate counsel was ineffective for failing to argue that trial counsel was ineffective in failing to object to the repeated testimony about Williams' brain matter on defendant. Because the court held in *Ward I* that this was proper testimony (*Ward I*, 154 Ill. 2d at 296), defendant could not have prevailed on this issue. Accordingly, defendant has not shown that he was prejudiced by appellate counsel's failure to make this argument.

Defendant's next contention of ineffective assistance of counsel at trial is that trial counsel repeatedly failed to object to the prosecutor's improper comments in closing argument. This claim is waived because it was not raised on direct appeal. Further, defendant cannot establish prejudice because the court held in *Ward I* that none of the prosecutor's comments in closing argument, individually or cumulatively, amounted to reversible error, and that "the evidence, which was substantially one-sided, and not the closing argument, was the cause of the verdict." *Ward I*, 154 Ill. 2d at 323. This holding also disposes of defendant's argument that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to these comments.

Defendant next contends that his trial counsel's cross-examinations of the State's scientific experts were insufficient. This argument is waived because it has a

basis in the original trial record and was not raised on direct appeal.

## Sentencing

Defendant also argues that he was prejudiced at his sentencing hearing by his counsel's failure to present sufficient mitigating evidence of his turbulent upbringing and his problems with drugs and alcohol. Claims of ineffective assistance of counsel at capital sentencing hearings are governed by the *Strickland* standard. A defendant must show that counsel's performance fell below an objective standard of reasonableness and that, absent counsel's errors, there is a reasonable probability that the trier of fact would have concluded that the balance of aggravating and mitigating factors did not warrant the death penalty. *People v. Henderson*, 171 Ill. 2d 124, 145 (1996).

The most significant aspects of defendant's troubled upbringing were introduced at his sentencing hearing. In *Ward I*, this court held that the evidence of defendant's tragic family life was properly weighed by the trial court and that the court did not err in finding that the evidence was not mitigating and may have been aggravating. *Ward I*, 154 Ill. 2d at 335-37. Defendant has not demonstrated a reasonable probability that any additional evidence on this matter would have changed the trial judge's evaluation of this evidence.

With respect to the evidence of defendant's alcohol and drug abuse, we initially note that we have recognized that evidence of a history of substance abuse is a double-edged sword because this evidence can be viewed as either aggravating or mitigating. *Coleman*, 183 Ill. 2d at 404; *People v. Shatner*, 174 Ill. 2d 133, 159-60 (1996). Because of this, a defense attorney must always make a strategic decision whether to present this evidence. Decisions on what evidence to present and which witnesses to call on a defendant's behalf rest with trial counsel

and, as matters of trial strategy, are generally immune from claims of ineffective assistance of counsel. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel fails to conduct any meaningful adversarial testing. *Reid*, 179 Ill. 2d at 310. Defendant's attorney introduced evidence in mitigation that defendant had a difficult and troubled upbringing and that a second person might have been involved in the crime. The decision not to supplement this evidence with evidence that defendant is a drug and alcohol abuser was not, on its face, unsound.

Further, even assuming any deficient performance in failing to investigate and present evidence of defendant's alcohol and drug abuse, defendant was not prejudiced because there is no reasonable probability that this evidence would have changed the result of the sentencing hearing. In *Ward I*, the court listed the aggravating factors the judge took into consideration, including the violent, cold, calculated, and premeditated manner in which the victims were executed; defendant's extensive criminal history and propensity to commit violent acts; defendant's disciplinary problems in the penitentiary; and his inability to assimilate himself into society or to be rehabilitated. *Ward I*, 154 Ill. 2d at 341. In rejecting defendant's mitigating evidence, the trial judge stated the following:

> "Well, I think it's obvious from his conduct that that is what he thinks, and whether he's striking out silently because of what he believes is injustice in society for what happened to his brother and his mother or whether that has aberrated [*sic*] his conduct in some way, that, we as ordinary humans, cannot tell because *we can't get in someone's head to find out what motivates them. It doesn't matter. The result is the same and the result is violence and cruelty and assaults and death.*
>
> And that is what Mr. Ward has perpetrated on this community and for that reason, Mr. Ward, I believe that the

appropriate sentence is that you be sentenced to death and that is the order of this court." (Emphasis added.)

Thus, the sentencing judge specifically found that, irrespective of defendant's motives, defendant needed to be sentenced to death for these murders. Defendant has not demonstrated a reasonable probability that the judge's decision would have been different if he also had considered that defendant's actions might have been fueled by alcohol and drug abuse.

Defendant further contends that counsel was ineffective for failing to present mitigating evidence of defendant's tendency to be led by others, specifically by Steve Burtin, and of Burtin's possible involvement in the crime. However, defense counsel did present mitigating evidence of Burtin's possible involvement in the crime, and the judge specifically considered that evidence. Further, defendant was not prejudiced by the omission of evidence of defendant's tendency to follow others, given the judge's above quoted statement that death was the appropriate punishment for these crimes, irrespective of the internal factors that motivated defendant. Defendant has not shown a reasonable probability that this evidence would have changed the result of the sentencing hearing.

### Cumulative Error

With respect to his ineffective assistance of counsel arguments, defendant also argues that the cumulative effect of trial counsel's errors denied him the effective assistance of counsel. We reject this argument for the same reason the court did in *Ward I*: "even assuming, *arguendo*, that the alleged errors, taken together, constituted substandard representation, it has not been established that but for them, there was a reasonable probability that the result of this case would have been altered, in view of the overwhelming evidence of defendant's guilt." *Ward I*, 154 Ill. 2d at 317-18.

## Jury Instruction

Defendant argues that the trial court violated his rights by giving the jury a misleading and erroneous instruction that combined the State's burden of proof for the two murders into one instruction, thereby giving the jury the impression that the intent and knowing elements did not necessarily have to apply to the individual killed. In essence, defendant believes that the jury could have convicted him of both murders on a finding of fewer than all the elements required for even one guilty verdict. Defendant raises this claim in four different manners. First, he argues it substantively. Second, he argues that trial counsel was ineffective for not objecting to the instruction. Third, he argues that appellate counsel was ineffective for failing to argue the issue on direct appeal. Fourth, he argues that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the instruction.

Defendant has waived his right to challenge this instruction and also his right to argue that trial counsel was ineffective for failing to object to the instruction. These issues had a basis in the trial record and could have been raised on direct appeal. We will consider, however, whether defendant received the ineffective assistance of appellate counsel.

As to the claim that appellate counsel was ineffective for not raising the jury instruction issue on direct appeal, defendant has not shown that he was prejudiced by this omission. The likely reason that appellate counsel did not argue this issue on direct appeal is that it was waived because trial counsel did not object to the instruction or offer an alternative instruction. Thus, on direct appeal, we would have found the issue waived. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Nevertheless, on direct appeal we probably would have relaxed the waiver rule because claims of substantial defects in jury instructions in criminal cases may be

considered, even where the defendant has failed to make timely objections. 177 Ill. 2d R. 451(c); *People v. Reddick*, 123 Ill. 2d 184, 198 (1988).

Even had we relaxed the waiver rule, however, we would have found any error in the instruction harmless. An error in a jury instruction is harmless if the result of the trial would not have been different if the proper instruction had been given. *People v. Johnson*, 146 Ill. 2d 109, 137 (1991). Defendant incorrectly states that the complained-of instruction, People's Instruction No. 11, was "the only instruction that the trial court gave to the jury regarding the specific elements required to prove Mr. Ward's guilt of the murders of Bruce Herd and Pamela Williams." This is not the case. People's Instruction No. 10, which tracks the language of the Illinois Pattern Jury Instruction applicable at the time (Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981) (hereinafter IPI Criminal 2d)), clearly sets out the elements of murder. It explains that, to find a person guilty of murder, the jury must find that, in performing the acts that caused an individual's death, the person intended to "kill or do great bodily harm to *that individual*," or that the person knew that such acts would "cause death to *that individual*," or that such acts created "a strong probability of death or great bodily harm to *that individual*." (Emphasis added.) IPI Criminal 2d No. 7.01.

The jury was faced with two instructions, one of which defendant contends is ambiguous, one of which is crystal clear. By not mentioning People's Instruction No. 10, defendant essentially asks us to read People's Instruction No. 11 in isolation. Jury instructions are not to be read in isolation; they are to be construed as a whole. *People v. Housby*, 84 Ill. 2d 415, 433-34 (1981). People's Instruction No. 10 unambiguously states that the intent and knowing elements must apply to the individual killed. The jury was additionally instructed that "[t]he

law that applies to this case is stated in these instructions and it is your duty to follow all of them. You must not single out certain instructions and disregard others." Thus, even assuming that, when read in isolation, People's Instruction No. 11 is ambiguous, People's Instruction No. 10 immediately dispels any confusion. Reading both instructions together, as the jury was instructed to do, the jury simply could not have convicted defendant of both murders on a finding of fewer than all of the elements required for each victim. Accordingly, we would have found on direct appeal that any error in People's Instruction No. 11 was harmless.

Defendant has thus failed to show that he was prejudiced by counsel's failure to raise this issue on direct appeal. This holding also disposes of defendant's argument that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the instruction.

### Ex Parte Conversation

On the fifth day of trial, defense counsel requested a continuance to locate witnesses with the assistance of the only subpoenaed defense witness who appeared at the courthouse. Defendant contends that the trial judge had an improper ex parte conversation with one of the State's witnesses, a police officer, and after this conversation denied defendant's request for a continuance to locate witnesses and instead gave defense counsel only the lunch hour to locate those witnesses. Defendant relies on the affidavit of his trial attorney, Kevin Smith, to support this claim. Defendant argues that the denial of the continuance deprived him of his constitutional rights to present a defense, to due process, and to a fair trial.

On direct appeal, this court considered defendant's argument that he was denied his right to present a defense when the court refused to grant him a continuance to locate these witnesses. *Ward I*, 154 Ill. 2d at 305-

10. The court held that (1) defendant did not show to the trial court that the potential testimony was relevant in establishing defendant's whereabouts at the time of the murders; and (2) defendant was not deprived of his constitutional right to present witnesses to establish a defense. It also noted that one of the witnesses was present in the courtroom, and defendant chose not to call him. Thus, defendant could not argue that he was prejudiced on this basis. All of these holdings are *res judicata*.

Defendant also argues that the conversation itself deprived him of his right to cross-examine witnesses, a right that is implicit in the constitutional right of confrontation. However, this issue is relevant only to whether the court erred in denying the defense request for a continuance, and this court held in *Ward I* that the trial court did not err in this regard. *Ward I*, 154 Ill. 2d at 305-10. Further, any error in the communication was harmless. Defendant argues that he was prejudiced in that these witnesses could have "testified that he was drinking in the neighborhood with Steve Burtin on the night of the crimes, thus undermining the State's theory that Mr. Ward was a stranger to the neighborhood." As the court noted in *Ward I*, defendant could have called Davis to establish that he was drinking with defendant in the neighborhood, but chose not to do so. *Ward I*, 154 Ill. 2d at 309-10. Moreover, this evidence was not exonerating and would not have undermined the overwhelming evidence of defendant's guilt.

### Trial Court's Ruling Limiting Defense Counsel's Opportunity to Argue That Williams Had Been Shot

Defendant argues that the court denied him his constitutional right to present a defense when it ruled that, if the defense argued that Williams had not been shot, then the State could show the jury a highly prejudicial close-up photograph of the back of Williams' head.

This issue could have been raised on direct appeal but was not. Consequently, it has been waived.

Defendant argues that appellate counsel was ineffective for failing to raise this issue in *Ward I*. By reframing the above argument, defendant is effectively asking us to reconsider an argument this court disposed of in the direct appeal. In *Ward I*, the court considered whether the prosecutor violated a trial court ruling by arguing that Williams had been shot. It found that, although it was questionable whether defendant sufficiently opened the door on the issue to allow the State to make that argument, the trial court was in a better position to determine the spirit and meaning of its own ruling and whether the prosecutor violated it. The trial court found that the prosecutor did not violate its ruling, and the court declined to disturb the court's finding. *Ward I*, 154 Ill. 2d at 321. This result would not have been different if appellate counsel had framed the issue in the manner defendant now frames it.

### Evidence of Defendant's Entire Prison Record

Defendant argues that the court erred in admitting at the sentencing hearing testimony and evidence of his entire prison record. He contends that this violated his constitutional right to due process because the court focused too extensively on defendant's prison record in sentencing defendant. In *Ward I*, this court held that the trial court did not err in admitting defendant's prison record (*Ward I*, 154 Ill. 2d at 327-31) and that the record was only one of many factors the court relied upon in reaching its sentence (*Ward I*, 154 Ill. 2d at 331-32). These holdings are binding, and defendant's current argument is barred by *res judicata*. Defendant's claim that appellate counsel was ineffective for failing to raise this issue on direct appeal is unavailing. Appellate counsel did raise this issue on direct appeal.

State's Argument on the Sufficiency of Mitigating Evidence

Defendant argues that the State repeatedly attempted to impermissibly shift its burden of showing "no mitigating factors sufficient to preclude the imposition of the death sentence" (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(h)) by arguing that the court must find the presence of mitigating factors in order to preclude the imposition of the death penalty. This issue is waived because it was not raised on direct appeal.

Defendant further contends that appellate counsel should have argued that trial counsel should have objected to the State's incorrect characterization of the legal standard to be applied in imposing the death penalty. This argument would not have succeeded on direct appeal. Defendant was sentenced by the trial judge, not by a jury. The trial court's comments at sentencing show that he understood and applied the correct legal standard that there were no mitigating factors sufficient to preclude the imposition of the death penalty. Appellate counsel was not ineffective for failing to raise this issue.

## CONCLUSION

Defendant's post-conviction petition, supported by the accompanying affidavits and the trial record, does not make a substantial showing that defendant's constitutional rights were violated. Accordingly, the court did not err in dismissing the petition without an evidentiary hearing. The judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, November 16, 1999, as the date on which the sentence of death entered in the circuit court is to be imposed. Defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1996)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Tamms Correctional Center, and

the warden of the institution where defendant is now confined.

*Judgment affirmed.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that the allegations in Ward's post-conviction petition and the supporting affidavits provide no cognizable basis for disturbing his convictions. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), this state's present death penalty law does not meet the requirements of the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) or article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). To the extent that the circuit court rejected Ward's challenge to the validity of his death sentence, its judgment should therefore be reversed, Ward's sentence of death should be vacated, and Ward should be sentenced to a term of imprisonment. Ill. Rev. Stat. 1983, ch. 38, par. 9—1(j). There is no need to remand for an additional sentencing hearing. Because Ward has been found guilty of murdering more than one victim, a term of natural life imprisonment is mandatory. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c).

For the foregoing reasons, I would affirm the judgment of the circuit court in part and reverse it in part. I would not disturb any of Ward's convictions, nor would I alter the sentences imposed on him by the circuit court for armed robbery and possession of a stolen motor vehicle. I would, however, vacate his death sentence and sentence him to a term of natural life imprisonment.